IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 2:17CR151 |
| | ) | |
| Plaintiff, | ) | JUDGE MARBLEY |
| | ) | |
| v. | ) | |
| | ) | |
| DARRELL BRYANT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## GOVERNMENT'S RESPONSE TO DEFENDANTS' JOINT MOTION TO SUPPRESS EVIDENCE

The United States of America, by and through the undersigned Assistant United States Attorneys, respectfully request the Court deny Defendants' Joint Motion to Suppress Evidence. The defendants have failed to articulate a sufficient basis for suppression of evidence. The government details the reasons for denial of Defendants' Joint Motion more fully in the accompanying memorandum in support.

Respectfully submitted,

BENJAMIN C. GLASSMAN
United States Attorney

s/Maritsa A. Flaherty
Maritsa A. Flaherty (0080903)
Kenneth F. Affeldt (0052128)
Assistant United States Attorneys
303 Marconi Blvd., Suite 200
Columbus, Ohio 43215
Phone: (614) 469-5715
Fax: (614) 469-2769
Maritsa.flaherty@usdoj.gov
ken.affeldt@usdoj.gov

**MEMORANDUM IN SUPPORT**

The defendants have failed to articulate a sufficient basis for suppression of evidence. First, defense has failed to show any violation of the defendants' Fourth Amendment rights. Second, defense has failed to show there is an absence of good cause in the orders executed by the court authorizing the disclosure and use of patient records, in accordance with 42 C.F.R. §290dd-2. Third, even if the orders are insufficient, suppression is not the proper remedy for violations of 42 C.F.R. §290dd-2. Fourth, the government will take all necessary precautions to protect the identity and treatment records of patients undergoing substance abuse treatment, therefore the Motion is premature. Finally, to grant suppression of the evidence goes against the intent of Congress in enacting 42 C.F.R. §290dd-2, which was to protect patients seeking substance abuse treatment, not fraudulent providers.

**I.  FACTS**

Defendants Darrell Bryant and Gifty Kusi owned and operated Health & Wellness Pharmacy, LLC (H&W), and Health & Wellness Medical Center, LLC (HWMC). On or about June 1, 2011, H&W became a Domestic Limited Liability Company (LLC) in the State of Ohio. Darrell Bryant was listed as the agent and incorporator of the retail pharmacy. H&W was located at 5050 Blazer Parkway, Suite 202, Dublin, Ohio 43017, within the Southern District of Ohio. H&W was previously located within Sav-a-Lot at: 2200 Mock Road, Columbus, OH, also within the Southern District of Ohio.

On or about February 24, 2014, HWMC became a Domestic Limited Liability Company (LLC) in the State of Ohio. Darrell Bryant was listed as the agent and incorporator of the business. Defendants Darrell Bryant and Gifty Kusi were licensed as pharmacists within the State of Ohio. HWMC operated for a brief period of time in the first floor at 5050 Blazer Parkway, before moving locations to 6810 Perimeter Drive, Suites 100 and 200, Dublin, Ohio 43016, within the Southern

District of Ohio. HWMC provided medication assisted treatment to individuals seeking Suboxone to treat their drug addiction.

The Ohio Attorney General's Medicaid Fraud Control Unit (MFCU) opened an investigation into a physician, not currently under indictment, under internal docket number M2130191. The initial allegation was that this physician may be illegally prescribing Suboxone, causing Medicaid to pay for these prescriptions that were not medically necessary. The investigation into this physician expanded into an investigation into the clinic where the physician provided services located in Grandview. Through that investigation, it was discovered that H&W marketed their pharmacy to patients at the clinic, offering gas cards to patients in exchange for their prescriptions, and dispensed or distributed Suboxone onsite at the clinic. During the investigation, there was a disagreement between the owners of H&W and the owner(s) of the clinic. As a result, H&W opened up their own Suboxone clinic called HWMC. HWMC was not operational until around mid to late 2014. Initially, HWMC only accepted cash as payment for services. However, around June 26, 2015, HWMC (by and through defendant Darrell Bryant) signed a Medicaid provider agreement and obtained a Medicaid provider number. By signing this agreement, Defendant Bryant agreed to comply with all state and federal rules and regulations.

In relation to this investigation, several court orders were sought by the MFCU. As the investigation expanded, additional court orders were sought. At all times, the MFCU operated in good faith (1) to limit the scope of the orders to facts known to agents at the time of the requested order, and (2) to protect the confidentiality of patient records, and ensure that if any disclosure occurred it would be properly disclosed for good cause pursuant to a court order.

On January 10, 2014, Judge Charles Schneider, Administrative Judge for Franklin County Common Pleas Court, ordered the Ohio Department of Medicaid (ODM) to "disclose relevant documents to the Attorney General's Office." Gov.Ex.1. The Order identified the need to protect

patient confidentiality and further ordered, "only authorized persons or agencies who help the Attorney General's Office investigate Medicaid fraud can have access to the records." This initial Order was narrowly tailored and limited to data held by ODM.

On January 27, 2014, in accordance with Ohio Rule of Criminal Procedure 6(E), Judge Schneider signed an Order authorizing any:

> "records and/or testimony received pursuant to subpoena *and/or motion and order* issued in connection with docket number M2130191 may be released by the Ohio Attorney General's Office to the United States Department of Justice ("DOJ"), the Federal Bureau of Investigation ("FBI"), the United States Drug Enforcement Administration ("DEA"), the Office of Inspector General of the U.S. Department of Health and Human Services ("HHS-OIG"), Ohio Board of Pharmacy ("BPh"), Ohio Medical Board ("OMB"), and such branches, employees and agents of those offices who may be assigned to the matter in furtherance of the investigation." Gov.Ex.2. (*emphasis added*)

In association with MFCU's docket number M2130191, the MFCU sought an expanded order in April of 2014, which sought to obtain records from additional sources and permission to conduct undercover operations, pursuant to 42 C.F.R. §2.67. Gov.Ex.3. On April 14, 2014, Judge Patrick Sheeran, Administrative Judge for Franklin County Common Pleas Court, issued an order authorizing the expanded order, which included among other permissions the use and disclosure of "patient medical files, billing records, or other pertinent business records, to be obtained via subpoena from the target provider, practice, or a dispensing pharmacy…[and] [i]nformation obtained from the use of undercover agents." *Id*. Judge Sheeran also authorized "[t]he records and information may be used in a criminal investigation … involving persons who may have violated state or federal laws relating to the Medicaid program…." *Id*. In the order, protections are outlined for disclosure of the patient records including, "only authorized persons or state *or federal agencies* that help the Attorney General's Office investigate Medicaid fraud and related crimes can have access to the records." *Id*. (*emphasis added*)

4

On December 19, 2014, Judge Sheeran signed another order authorizing the disclosure and use of certain patient records in relation to MFCU case M2130191, which included language similar to the April 2014 Order. Gov.Ex.4.

On July 27, 2015, Judge Sheeran signed another order authorizing the disclosure and use of certain patient records in relation to MFCU case M2130191. Gov.Ex.5. This order was clerked on July 30, 2015, only two days after the Honorable Magistrate Judge Norah McCann King signed the federal search warrants for both H&W and HWMC (July 28, 2015) and on the same date the search warrants were executed. The July 2015 Order specifically authorized the MFCU to use and obtain disclosure of records related to services rendered by H&W and HWMC. At the time of issuance of the Order, HWMC had just become a Medicaid provider. Much like the April 2014 Order, Judge Sheeran authorized the use of the records in a criminal investigation and limits disclosure to "authorized persons or state *or federal agencies* that help the Attorney General's Office investigate Medicaid fraud and related crimes can have access to the records." *Id*. (*emphasis added*) The July 2015 Order also permitted use and disclosure of "[i]nformation obtained via surveillance (live or electronic) of the practice location(s), including the possible use of a variety of techniques to identify those observed during the surveillance period…." *Id.*

On July 28, 2015, the Honorable Magistrate Judge Norah McCann King authorized a warrant to be executed at the locations of H&W, located at 5050 Blazer Parkway, Suite 202, Dublin (Defendant Ex. D-5), and HWMC, located at 6810 Perimeter Drive, Suite Suites 100 and 200, Dublin, Ohio (Defendant Ex. D-4). Those warrants were executed by federal and state agents on July 30, 2015.

On August 18, 2016, based on additional knowledge and evidence obtained in the investigation, the MFCU applied for, and was granted, another order authorizing the disclosure and use of certain patient records in relation to MFCU case M2130191. Gov.Ex.6. The August

2016 Order, signed by Judge Laurel Beatty (on behalf of Judge Sheeran), specifically authorized the MFCU to use and obtain disclosure of records related to services rendered by H&W and HWMC. Like the prior orders, the MFCU was granted permission to use of the records in a criminal investigation and limited disclosure to "authorized persons or state *or federal agencies* that help the Attorney General's Office investigate Medicaid fraud and related crimes can have access to the records." *Id*. (*emphasis added*) The August 2016 Order also permitted use and disclosure of "[i]nformation obtained via surveillance (live or electronic) of the practice location(s), including the possible use of a variety of techniques to identify those observed during the surveillance period…." *Id.* This Order was issued on the same date undercover operations began, and more than a month before the second search warrant at HWMC premises.

On September 20, 2016 the Honorable Magistrate Judge Elizabeth Preston Deavers authorized a warrant to be executed at HWMC, located at 6810 Perimeter Drive, Suite Suites 100 and 200, Dublin, Ohio (Defendant Ex. D-10). On September 21, 2016, another warrant was authorized by the Honorable Magistrate Judge Elizabeth Preston Deavers, to include the addition of Suite 210 at HWMC (Defendant Ex. D-12). Both warrants were executed on September 21, 2016, by federal and state agencies.

On July 11, 2017, defendants were Indicted in the instant case with charges that include Conspiracy to Commit Health Care Fraud, and Health Care Fraud in relation to their operation of H&W and HWMC. Specifically, the government alleges defendants conspired to unlawfully enrich themselves by: (1) billing, or causing bills to be submitted, for compound creams that were not provided; (2) billing, or causing bills to be submitted, for compound creams that were not medically necessary, because it was not requested to be filled by the patient, and/ or it was not legitimately prescribed by a physician; (3) billing, or causing bills to be submitted, for counseling services that were not provided; (4) billing, or causing bills to be submitted, for individual

6

counseling services that were provided in a group setting; and (5) billing, or causing bills to be submitted, for counseling services by unqualified individuals, when there was no proper supervising physician.

**II.  LAW**

Substance abuse and treatment records are confidential and protected with safeguards beyond the traditional HIPAA protections. 42 United States Code Section 290dd-2(a) provides:

> Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall, except as provided in subsection (e), be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b).

Permitted disclosures occur "[i]f authorized by an appropriate court of competent jurisdiction grant[s] after application showing good cause therefore…. In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services." 42 U.S.C. §290dd-2(a).

Federal regulations in reference to court orders authorizing the disclosure and use of substance abuse and treatment records are contained in 42 C.F.R. §2.61 to §2.67. Specifically, 42 C.F.R. §2.66(a)(1) allows "any administrative, regulatory, supervisory, investigative, law enforcement, or prosecutorial agency having jurisdiction over the program's or person's activities" to seek an order authorizing the disclosure and use of patient records to investigate or prosecute a substance abuse treatment program or the person holding the records. The application for the order "may be filed separately or as part of a pending civil or criminal action against a part 2 program or the person holding the records…" 42 C.F.R. §2.66(a)(2). The effect of having a court order is to "authorize a disclosure or use of patient information which would otherwise be prohibited by 42 U.S.C. §290dd-2…." 42 C.F.R. §2.61.

Health care providers, such as a physician billing Medicaid, are required to document services provided to patients and to retain patient medical records for six (6) years, pursuant to both Federal and State law, in Ohio. 42 C.F.R. §164.316(b)(2) and O.A.C. §5160-1-17.2. As a federally funded organization they are required to keep and maintain records to document the services were provided and medically necessary and provided in accordance with the law. Further, the MFCU has a statutory duty to investigate and prosecute fraud in the program. See 42 U.S.C. §1396b(q)(3); 42 C.F.R. §455.15; §455.21; §1007.11; and O.R.C. §109.85.

### III. ARGUMENT

#### a. **There is no violation of Defendants' Fourth Amendment.**

The defendants have failed to articulate a sufficient basis for suppression of evidence. The Fourth Amendment protects individuals from "unreasonable search and seizure" by providing that such searches and seizures shall only be conducted pursuant to a validly issued warrant based "upon probable cause." The exclusionary rule provides that any evidence obtained in violation of the Fourth Amendment will be excluded from criminal proceedings. However, there is no Fourth Amendment violation in this case.

Warrants were issued in the Southern District of Ohio on July 28, 2015 and September 20 and 21, 2016. (Defendants' Exhibits D-4, D-5, D-6, D-7, D-8, D-10, D-11, D-12) Defense has not alleged any insufficiencies with the warrants themselves, nor alleged there was insufficient probable cause used to justify the warrants. Therefore, the warrants issued in this case are valid and the evidence obtained from them should not be suppressed.

Instead, defense argues the searches were "conducted outside the judicial process, without prior approval by a judge or magistrate…." Defendants' Motion, pg.4 (*citing Mincey v. Arizona*, 437 U.S. 385, 390) All the warrants executed in this case have prior approval by a judge or magistrate. There is nothing to indicate these warrants were conducted "outside the judicial

8

process." The issue raised from defense is that the judicial process requires more than the warrants, requiring additionally court orders issued pursuant to 42 C.F.R. §290dd-2. In this case, there are several valid court orders authorizing defendants' to disclose the records that were seized pursuant to the search warrants. Therefore, there is no Fourth Amendment violation.

b. **There are valid court orders that authorize the disclosure and use of patient records in accordance with 42 C.F.R. §290dd-2.**

Defense's argues the state issued orders are invalid because (1) the order was issued subsequent to the first set of warrants (in reference to the August 2016 Order); (2) orders were not issued by a court of competent jurisdiction and were not authorized for disclosure to the United States; (3) the orders did not grant access to confidential communications; and (4) the orders did not permit the use of undercover operations. For all of the reasons listed below, these arguments fail.

In total, the MFCU obtained five (5) court orders related to their investigation in M2130191. Each application and order took into account additional evidence received through the course of the investigation. As more entities became targets in the investigation, the scope of the orders expanded, as did the MFCU requests. In addition, as additional state and federal agencies joined the investigation, the orders accounted for information sharing amongst other law enforcement agencies. At no time did MFCU, federal or state agents, investigate the case without a valid court order in place.

While there are five (5) court orders in place, this Court need only focus on the July 2015 Order. Gov.Ex.5. The July 2015 Order specifically authorized the MFCU to use and obtain disclosure of records related to services rendered by H&W and HWMC. Judge Sheeran authorized the use of the records in a criminal investigation and limits disclosure to "authorized persons or state *or federal agencies* that help the Attorney General's Office investigate Medicaid fraud and

9

related crimes can have access to the records." *Id*. (*emphasis added)* This Order was clerked on the same date the first search warrants were executed. The August 2016 Order was clerked about a month before the second search warrant was executed at HWMC.

Defense argues "[t]he federal government did not seek orders in compliance with these privacy laws." Defendants' Motion pg. 7. Defense cites no case law to support why the state orders are insufficient. Federal regulations allow "*any* administrative, regulatory, supervisory, investigative, law enforcement, or prosecutorial agency having jurisdiction over the program's or person's activities" to seek an order authorizing the disclosure and use of patient records to investigate or prosecute a substance abuse treatment program or the person holding the records. 42 C.F.R. §2.66(a)(1) (*emphasis added*) In 42 C.F.R. §290dd-2, there is no specific provision that each agency must separately seek its own court order. Nor is there a specific provision that limits authority to grant court orders only to federal courts.

In this case, the orders at issue were signed by honorable judges at the Franklin County Common Pleas Court, a court of competent jurisdiction to oversee matters related to H&W, HWMC, and ODM, all of which are located within Franklin County, Ohio. Those Orders specifically outlined the ability of the MFCU to use and disclose (in limited circumstances) confidential patient records. Specifically, the orders at issue (with the exception of the January 2014 Order), permitted disclosure of the records to federal agencies. As part of a Health Care Fraud Task Force, many agencies, including the MFCU, HHS-OIG, DEA, FBI, and the Ohio Board of Pharmacy, often work together in joint investigations. It is not uncommon for the sharing of investigative information between the agencies in order to prevent duplication of efforts.

Both the July 2015 and the August 2016 Orders permitted the MFCU to use and disclose "records and information in connection with its investigation under its internal docket number M2130191, that may be considered confidential under R.C. §5119.27, 42 U.S.C.A. §290dd-2 or

42 C.F.R. §§2.61 *et seq*." Gov.Ex.5 and Gov.Ex.6. While the Orders don't specifically enumerate "confidential communications," those are considered within the specific records and information that may be obtained. For example, the Orders articulate the following records and information that may be obtained: "[p]rescription records …[records] related to claims paid and services rendered by the offices of HEALTH & WELLNESS PHARMACY, LLC …; and HEALTH & WELLNESS MEDICAL CENTER, LLC… patient medical files … [i]nformation obtained via surveillance (live or electronic)…." *Id.* Those records may contain confidential communications, but there is no way to know without obtaining the records. More importantly, defense has failed to articulate which, if any, confidential communications were improperly used or disclosed. Instead, defense makes a vague and overly broad argument that "medical history, symptoms, and counseling records" are all confidential communications. Defendants' Motion pg. 9. The government disagrees with this broad interpretation of the term "confidential communications." In essence, defense interchanges the term "confidential communications" with all records obtained pursuant to an order issued in accordance with 42 C.F.R. §290dd-2. The statute provides for the use and disclose of records containing "the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program." 42 U.S.C. §290dd-2. The statute additionally provides for the use and disclosure pursuant to an order issued for "good cause." *Id*. Confidential communications are referenced separately under a different standard, in 42 C.F.R. §2.63. These "communications" are held to a higher standard and require additional scrutiny. Again, defense has failed to identify confidential communications, and the government does not believe they exist in the records seized. Some of the records seized included, but are not limited to: duplicative, repeated typed group counseling notes that were not individualized for any patient; coloring pages; notes re: how the client "processes well using colors"; were blank pre-signed counseling notes; and compound cream prescriptions that were not

11

related to substance abuse treatment. Nothing in these records raises to the level of "confidential communications" within the meaning of 42 C.F.R. §2.63.

Finally, both the July 2015 and the August 2016 Orders permitted for the use of undercover operations. Gov.Ex.5 and Gov.Ex.6. Therefore, defense has failed to articulate a sufficient justification for the suppression of evidence. The court orders are valid, and the government complied with 42 C.F.R.§290dd-2.

### c. Defense has failed to show the court orders were issued with the absence of good cause.

In order to support an argument that the court orders obtained were invalid, defense bears the burden of showing the absence of good cause. *United States v. Shinderman*, 432 F.Supp.2d 149 (D. Maine 2006). Defense failed to raise this argument, and cannot meet its burden. Multiple honorable judges signed off on court orders finding good cause existed for the use and disclosure of the records associated with H&W and HWMC. In addition, two (2) honorable Magistrate judges signed off on search warrants finding probable cause existed for the search and seizure of records associated with H&W and HWMC.

Regardless of defenses' failure to raise the issue, the government submits good cause existed at all times when applying for and requesting the orders to use and disclose information related to substance abuse treatment in relation to this case. To determine good cause, courts must "weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services." 42 U.S.C. §290dd-2(b)(2)(C). In this case, there is a substantial public interest in ensuring patients seeking substance abuse treatment receive the services that are billed to government programs, including Medicaid. The interest extends not only to the public at large, but to the patients who desire actual legitimate treatment. In addition to the public interest, is the MFCU's statutory duty to investigate and prosecute fraud.

*See* 42 U.S.C. 1396b(q)(3); 42 C.F.R. 455.15, 455.21, 1007.11; RC §109.85. In this case the investigation rested on evidence that H&W and HWMC (both Medicaid providers) may be fraudulently billing. Thus, good cause existed for the use and disclosure of patient records necessary to prevent the continued alleged fraudulent billing, to protect the Medicaid patients and/or to protect the community.

**Suppression is not the proper remedy for violations of 42 C.F.R. §290dd-2**.

Even if this Court finds the Government improperly obtained such orders, suppression of the evidence is not the proper remedy. 42 CFR §290dd-2 was designed to protect the patients, not fraudulent actors. The Government complied with the purpose and intent behind 42 CFR §290dd-2 by obtaining multiple court orders and relying upon those orders in good faith. The government has taken all appropriate steps to balance the public need to ensure providers who bill Medicaid and other insurance programs do so legitimately, with the rights of the patient records to be confidential.

In relation to this investigation, several court orders were sought by the MFCU. As the investigation expanded, additional court orders were sought. At all times, the MFCU operated in good faith (1) to limit the scope of the orders to facts known to agents at the time of the requested order, and (2) to protect the confidentiality of patient records, and ensure that if any disclosure occurred it would be properly disclosed for good cause pursuant to a court order.

Nothing in the statute that provides for suppression of evidence. The statute instead, provides fines for violations of the statute. Additionally, 42 C.F.R. 2.66(b) allows a "program" an opportunity to seek revocation or amendment of an order authorizing the disclosure or use of patient records. Therefore, the statute provides remedies for violations but neither of which is suppression of evidence.

While there is sparse case law in relation to the specific issue raised by defense, the District Court in Maine addressed a similar issue. In *United States v. Shinderman*, 432 F.Supp.2d 149 (D. Maine 2006). Shinderman, a medical doctor under indictment for fraud, argued the government should not have access to the patient records at a methadone treatment facility. Specifically, Shinderman argued when the civil investigation turned into a criminal investigation, the civil authority lapsed. Shinderman also argued he was not timely provided notice and an opportunity to "seek revocation or amendment of the order" pursuant to 42 C.F.R. §2.66(b). The Court disagreed finding "there was no violation of the statute or regulations that calls for suppression." *Id.* at 152. The Court found the civil authority did not lapse, upon the change in the investigation, and "[t]here was no bad faith (the government obtained court approval)…." *Id.* at 154.

Shinderman also moved to suppress evidence obtained in connection with a search warrant. The Court denied the motion finding Shinderman failed to articulate specific evidence that should be suppressed and instead "fears there may be some." *Id.* at 156.

The instant case is analogous to Shinderman. The Government, which includes state and federal agents, operated at all times in good faith relying on the good cause court orders issued by a competent court. Even if the government mistakenly relied on the state orders, suppression is not the proper remedy.

    **d. The government will take all necessary precautions to protect the identity and treatment records of patients undergoing substance abuse treatment, therefore Defendants' Motion is premature.**

The Government intends, as articulated in the court orders, to take all appropriate measures to protect the patients' identities through: use of client numbers in place of names; and all patient identifiers will be redacted. Any such motion made by defense is premature.

The court shall impose appropriate safeguards against unauthorized *disclosure*." 42 U.S.C. §290dd-2(b)(2)(C) (*emphasis added*). "An order entered under this section must require the deletion of patient identifying information from any documents made available to the public." 42 C.F.R. §2.66(d).

Defense mistakenly interprets 42 U.S.C. §290dd-2(b)(2)(C) by assuming disclosure has already occurred. In relation to the seizure of records, the disclosure is made by the provider from whom we seized the records. That provider, the defendants, are protected in this case, because we had a legal court order authorizing the disclosure. After the evidence was seized, the onerous is on the government to ensure the records are not improperly disclosed. The former is not an issue as we are not alleging defense improperly released the records; the latter is not an issue as we have not disclosed the records. This matter only becomes an issue at trial, when the records may be disclosed.

The government considered these provisions in its application and implantation of the Orders requested in this case. Specifically, the July 2015 and August 2016 Orders provide:

> If the Attorney General's Office requests submission of client records into the record of any proceeding related to this investigation, the records will be submitted according to the following limitations. The submitted records shall have the name and social security number of the patient redacted. Unredacted copies of patient records will be available for in camera inspection at the proceeding and may be admitted under seal. A patient key shall be created which contains the names of the patients. The key shall contain the name of the patient whose identity has been redacted, and the patient shall then be identified by Client Number. The patient shall be referred to by that number, and the court reporter shall be instructed to refer to the patient by that Client Number when identified in the transcript of the proceedings. When the evidentiary record is closed, records that are admitted and that contain patient-identifying information shall be assembled, with the unredacted documents placed under seal with instructions that the contents of the sealed envelope are subject to restrictions found in … 42 U.S.C.A. §290dd-2 and 42 C.F.R. §2.64 through §2.66, inclusive… References to patients contained in the transcript of the proceeding shall be redacted by the court reporter, substituting the patient's key number for his or her name…."

Gov.Ex.5 and Gov.Ex.6.

The government intends to continue to comply with the court orders issued in this case, and additionally request an order prior to trial in the Southern District of Ohio. In addition, disclosure is permitted based upon patient consent. Both are pre-trial issues that will be addressed with the court prior to trial and prior to the disclosure of the confidential records. Therefore, Defendants' Motion is premature and should be denied.

### e. To grant suppression of the evidence goes against the intent of Congress in enacting 42 C.F.R. §290dd-2, which was to protect patients seeking substance abuse treatment, not fraudulent providers.

Defendants state "the legislative purpose behind the privacy legislation must be considered. These laws were designed to help those who suffer from substance use disorders seek the necessary treatment without fear of stigma, retaliation, and prosecution." Defendants' Motion pg. 12. The government agrees, the legislative intent appears clear. Congress wanted to allow patients access to substance abuse treatment without fear of reprisal or prosecution. The intent is to protect patients. In fact, every order (with the exception of January 2014) obtained by the government specifically states, "[t]he records and information obtained pursuant to this Order may not be used to investigate or prosecute a patient." Gov.Ex.3,4,5,6. No patients have been investigated or prosecuted in accordance with this investigation.

Where the government disagrees, is defendants' use of the statute for their own good. Defendants are not patients seeking substance abuse treatment. Instead, they are providers of this treatment. Patients who truly need treatment, who should be allowed to "seek the necessary treatment without fear of stigma, retaliation, and prosecution" should also be allowed to seek legitimate treatment provided by honest providers. Defendants' Motion pg.12. To find otherwise would prevent the government from investigating and prosecuting any Medicaid or Medicare provider for fraud. This would leave providers of substance abuse treatment to run unchecked and

unaccounted for; essentially giving providers of substance abuse treatment a free pass to commit any fraud imaginable. Clearly, this was not the intent of the statute. At a time when substance abuse treatment is needed more than ever, providers must be held accountable for their actions so that patients can find the treatment they so desperately need.

## IV. CONCLUSION

For all the reasons listed above, the United States respectfully requests this Court deny Defendants' Joint Motion to Suppress Evidence.

> Respectfully submitted,
>
> BENJAMIN C. GLASSMAN
> United States Attorney
>
> s/Maritsa A. Flaherty
> Maritsa A. Flaherty (0080903)
> Kenneth F. Affeldt (0052128)
> Assistant United States Attorneys
> 303 Marconi Blvd., Suite 200
> Columbus, Ohio 43215
> Phone: (614) 469-5715
> Fax: (614) 469-2769
> Maritsa.flaherty@usdoj.gov
> ken.affeldt@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of October, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic system.

> s/Maritsa A. Flaherty
> MARITSA A. FLAHERTY
> Assistant United States Attorney