IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO.: 2:17-CR-146 (2) |
| Plaintiff, | ) |
| | ) JUDGE MARBLEY |
| v. | ) |
| GIFTY KUSI, | ) |
| Defendant. | ) |

**UNITED STATES' SENTENCING MEMORANDUM**

Defendants Darrell Bryant and Gifty Kusi were charged with one count of Conspiracy to Commit Health Care Fraud, in count 1 of the Indictment, and four counts of Health Care Fraud, in counts 2 through 5 of the Indictment. All counts related to fraudulent billings submitted to the Ohio Medicaid program. Count 2 related to billing the Ohio Medicaid program for compound creams not provided to patients; Count 3 related to billing the Ohio Medicaid program for compound creams that were not medically necessary; Count 4 related to billing the Ohio Medicaid program for counseling services not provided or provided in a group setting; and Count 5 related to billing the Ohio Medicaid program for counseling services performed by unqualified individuals, who were not properly supervised. Defendants Darrell Bryant and Gifty Kusi maintained not guilty pleas. The case proceeded to trial beginning on December 3, 2018. The government presented numerous witnesses and exhibits at trial, which lasted through December 14, 2018. On December 18, the Jury returned a verdict convicting defendants Darrell Bryant and Gifty Kusi of Counts 1, 3, 4, and 5. The Jury acquitted defendants Darrell Bryant and Gifty Kusi on Count 2.

## LAW

The Sentencing Guidelines are advisory, based on the Supreme Court's landmark decision in *United States v. Booker*, 543 U.S. 220 (2005). Sentencing judges must now impose sentences in accordance with factors provided in 18 U.S.C. §3553(a), which describes Congress's federal sentencing goals. Although the Sentencing Guidelines are no longer mandatory, a district court must still calculate and consider a defendant's sentencing range when determining an appropriate sentence. *Gall v. United States*, 552 U.S. 38 128 S. Ct. 586, 596 (2007); *Booker, supra,* 543 U.S. at 245-46. After calculating the advisory Guidelines range, the Court must consider that range along with all of the factors listed in 18 U.S.C. §3553(a) before arriving at a final sentence.

An evidentiary hearing maybe used to resolve disputed issues. *See, e.g., United States v. Jimenez Martinez*, 83 F.3d 488, 494-95 (1st Cir. 1996). In determining the relevant facts, sentencing judges are not restricted to information that would be admissible at trial. *See* 18 U.S.C. § 3661; *see also United States v. Watts*, 519 U.S. 148, 154 (1997) (holding that lower evidentiary standard at sentencing permits sentencing court's consideration of acquitted conduct); *Witte v. United States*, 515 U.S. 389, 399-401 (1995) (noting that sentencing courts have traditionally considered wide range of information without the procedural protections of a criminal trial). Any information may be considered, so long as it has sufficient indicia of reliability to support its probable accuracy. *Watts*, 519 U.S. at 157.

## FACTS

The defendant, Gifty Kusi, is a licensed pharmacist in the State of Ohio who owned and operated Health and Wellness Pharmacy, LLC (HWP) and Health and Wellness Medical Center, LLC (HWMC) both located in Dublin, Ohio, within the Southern District of Ohio. In February 2015, Gifty Kusi married co-defendant Darrell Bryant, also a licensed pharmacist in the State of Ohio. Defendant Bryant co-owned and operated HWP and HWMC.

During the trial, the government presented evidence proving beyond a reasonable doubt

that defendant Gifty Kusi knowingly executed a scheme or artifice to defraud a health care benefit program, in violation of 18 USC §1347, by causing false claims to be submitted to the Ohio Medicaid program, which is a Health Benefit Program as defined under 18 USC §24(b). Specifically, the defendant did so by billing the Ohio Medicaid program: for compound creams that were not medically necessary; for counseling services not provided or provided in a group setting; and for counseling services performed by unqualified individuals, who were not properly supervised.

Without re-trying the entire case before the court, the government seeks to highlight several facts relevant to sentencing. During the trial, the government presented substantial evidence defendant Kusi exercised authority over the employees at HWP and HWMC. Specifically, Kusi pushed the compound creams. Kusi created the labels for the compound creams based off prescriptions in which she knew the physician never met with the patients. Kusi directed employees to sell the compound creams to Medicaid, specifically CareSource, members. At HWMC, Dr. Kusi ran the day-to-day operations. Kusi made policy decisions regarding the patient visit frequency, dosage amounts of medications, directed staff how to bill Medicaid, and controlled the daily scheduling and office "flow." The employees all indicated Dr. Kusi was in charge.

Additionally, during trial the Government presented evidence that it was standard operating procedure at HWMC for physicians to pre-sign prescriptions for Suboxone, and leave these in the patient files. Front desk staff indicated the patients did not have to see a doctor if there was a pre-signed prescription in the file. During a subsequent trial of Dr. Oppong, additional witness testimony revealed that "Dr. Bryant" would see patients for follow-ups, if there was a pre-signed prescription in the file. Several individuals indicated Kusi knew Bryant was seeing patients. Defendant Kusi was in charge of the front desk area, where the prescriptions for Suboxone were

ultimately distributed.

Most importantly, while under investigation, subsequent indictment, and post-verdict, the defendant continued to engage in illegal activities. Through the course of the trial, it became apparent to the government that no conditions or set of conditions would stop the defendant and co-defendant Bryant from their continued illegal operation of multiple Suboxone clinics. By operating the clinics, which accepted and billed Ohio Medicaid, defendants continued to commit Health Care Fraud, in violation of Title 18, Section 1347 of the United States Code. By directing staff to pass out pre-signed prescriptions for controlled substances, the defendants continued to conspire to violate Title 21, Section 841 of the United States Code, and to illegally distribute controlled substances.

## APPLICATION OF §3553(A) FACTORS

The Guideline range, as calculated by the U.S. Probation Officer and agreed to by the Government, is a level thirty (30) with a criminal history category of I, suggesting a guideline sentence of ninety-seven (97) months to one hundred and twenty-one months (121). For the reasons set forth below, the United States believes a sentence of eighty-four (84) months is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a).

1. **(A) Nature and Circumstances of the Offense**

    The nature and the circumstances of the offense, as outlined in the indictment, through the course of the trial and presentence investigative report are serious. The defendant knowingly and intentionally outlined multiple schemes to defraud the Ohio Medicaid Program for nothing more than her own financial gain. In total, the defendant defrauded Medicaid out of $3,207,491.22. Medicaid is a program created in order to provide necessary health care treatment to those that cannot afford it. Instead of providing necessary treatment to those that need it most, defendant Kusi fraudulently billed Medicaid for useless and unneeded compound creams, as well

4

as sham counseling services which were nothing more than individuals sitting in a room and coloring.

In addition, the circumstances of this offense involve the defendant's operation of HWMC, an unlicensed Office-Based Opioid Treatment (OBOT) facility, under the guise of providing medication assisted treatment (MAT) to those patients suffering from opioid addiction. Under Ohio law, an OBOT must be licensed by the Ohio Board of Pharmacy, Ohio Mental Health and Addiction Services (OMHAS) certified, or CARF accreditation, yet defendant Kusi never obtained such required licensure. The seriousness of the offenses in this case cannot be understated. Many patients went to HWMC desperate for treatment of their opioid addiction. In doing so, the patients put their trust in the defendant that they would receive proper medical treatment and proper counseling. Instead, they were met by defendant Kusi who pushed patients into waiting rooms, co-defendant Bryant who posed as a "doctor," and counselors who simply supplied crayons.

Opioid addiction, abuse and overdoses are at epidemic levels in the United States. The defendant, with her education, was in a unique position to help treat patients. Instead, the defendant chose to turn a profit. The opioid epidemic doesn't exist without individuals, such as the defendant, who abuse their position of trust and place profit over patient care.

1. **(B) History and Characteristics of the Defendant**

The defendant is a 34 year-old educated individual. The defendant is a licensed pharmacist in the State of Ohio, and has been since 2012. In addition, the defendant has obtained a Bachelor of Arts degree in Biochemistry. Defendant has two (2) children, under the age of two (2), with the co-defendant Darrell Bryant. The defendant immigrated to the United States from Ghana in 2003 and has been a permanent resident since. Given the nature of the offense of

defendant's conviction, her resident status will be under review. The defendant does not have any known health concerns, nor does she have a significant family history. The defendant reports a good upbringing, including a close bond with her parents and siblings. The defendant does not have a significant criminal history. The government factored in the defendant's age, health, education and history into the recommended sentence.

**2. Need for the Sentence**

In addition to the above, pursuant to 18 U.S.C. § 3553(a)(2), the Court shall consider the need for any sentence imposed, "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational training, medical care, or other correctional treatment." A significant prison sentence is appropriate in this case in order to reflect the seriousness of the offense, to satisfy the principles of both general and specific deterrence, and to adequately protect the public from future harms by the defendant. Each of these factors will be discussed in relation to how they support the recommended sentence.

**A. To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.**

As discussed above, in paragraph 1A, the seriousness of the offense cannot be understated. The defendant was in a unique position based on her education to treat those individuals that needed it most. Instead, the defendant put her desire for financial gain over the patient's needs.

Further, the defendant did not operate alone. Defendant Kusi, along with co-defendant Bryant, concocted these schemes to defraud and dragged others into their criminal enterprise,

namely Dr. Jornel Rivera, Dr. Bernard Oppong, and Dr. Michael Alexander. All three doctors have now either pled guilty or been convicted of crimes associated with defendants Bryant's and Kusi's schemes and illegal activity. All three doctors will inevitably lose their license to practice medicine.

Instead of contributing to treating the opioid epidemic, the defendant further added to the crisis. For these reasons, the recommended sentence reflects the seriousness of the offense, and promotes respect for the law.

### B. To afford adequate deterrence to criminal conduct.

As stated earlier, the defendant has committed serious offenses. In the wake of the opioid epidemic, deterrence is key. The opioid epidemic does not exist without the actions of individuals such as the defendant, who abuse their positions of trust for financial gain. When opioid addiction is at its peak, individuals should be able to trust their addiction treatment providers. Instead, the defendant pushed Suboxone at patients, while denying them true medical treatment or even minimal counseling. It is precisely these actions, such as the defendant's, that lead to addiction and overdose deaths and contribute to the opioid epidemic.

Therefore, to promote both general deterrence of other treatment providers, as well as specific deterrence of the defendant, the recommend sentence is appropriate.

### C. To protect the public from further crimes of the defendant.

From the time the Medicaid suspension was issued on September 23, 2016, until the Court revoked Defendant's bond on March 21, 2019, defendants Bryant and Kusi continued the illegal operation of an OBOT facility. Both defendants Bryant and Kusi were the *de facto* owners and operators of Alexander Recovery Center (ARC) at three locations in the Southern District of Ohio. ARC continued to bill Medicaid, through use of Dr. Alexander's Medicaid number, despite Bryant

and Kusi's suspension from the Medicaid program. Dr. Alexander was used for the purposes of his name and his Medicaid number to continue billing Medicaid in violation of law and the suspension. Employees reported Bryant and Kusi are the owners and in control of all operations at ARC. Financial records obtained confirmed Bryant and Kusi controlled ARC's finances, even issuing payments to Dr. Alexander with a memo line indicating "Medicaid." During this time, Bryant and Kusi ran all operations, including running operations of the clinics by a remote video monitoring system. On February 27, 2019, no physicians were onsite at ARC, yet pre-signed prescriptions for Suboxone, a Scheduled III controlled substance, were still issued to patients at the direction of defendants Bryant and Kusi.

The defendant's overall disregard of the law, and this Court's orders to comply with it, certainly speaks to her inability to be rehabilitated. The defendant's actions clearly illustrate that a sentence of imprisonment is essential to protect the public from the defendant's continuous illegal activity. The recommended sentence of imprisonment will ensure the defendant can no longer defraud Medicaid, and no longer illegally distribute controlled substances.

### D. To provide the defendant with needed educational training, medical care, or other correctional treatment.

It may not be clear what could possibly assist the defendant in preventing her continued criminal activity, if multiple search warrants, a Medicaid suspension, an indictment, and a direct court order were not enough. However, a sentence at a correctional facility will certainly give defendant an opportunity to consider the nature of this offense and her conduct. What is clear, is that the defendant's continued illegal conduct will be prevented by imposing the recommended sentence.

3. **The Kinds of Sentences Available**

Given the egregious and continuous illegal criminal conduct in this case, a prison sentence is available and appropriate. In addition to the recommend prison sentence, pursuant to Title 18, United States Code Section 3663A, an order of restitution would be appropriate. The government further requests an order of restitution in the amount of $3,207,491.22 payable to CareSource in the amount of $2,793,528.43, to Molina Healthcare of Ohio in the amount of $230,077.95, to Paramount Advantage in the amount of $84,864.97, to Buckeye Centene Corporation in the amount of $51,714.24 and to the Ohio Department of Medicaid in the amount of $47,305.63.

4. **Sentencing Range Established for the Offense**

The Guideline range, as calculated by the U.S. Probation Officer and agreed to by the Government, is a level thirty (30). The defendant is a criminal history category of I, resulting in sentencing guideline range of ninety-seven (97) to one hundred and twenty-one (121) months. Because the defendant's conduct was egregious and continuous (even while under indictment and post-verdict), the United States believes a sentence of eighty-four (84) months is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a).

## CONCLUSION

Consideration of the above mentioned sentencing factors suggests that a sentence of eighty-four (84) months is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a).

          Respectfully submitted,

          BENJAMIN C. GLASSMAN
          United States Attorney

          s/Maritsa A. Flaherty
          Maritsa A. Flaherty (0080903)
          Kenneth F. Affeldt (0052128)
          Assistant United States Attorneys
          303 Marconi Blvd., Suite 200
          Columbus, Ohio 43215
          Phone: (614) 469-5715
          Fax: (614) 469-2769
          Maritsa.flaherty@usdoj.gov
          ken.affeldt@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of October 2019 a copy of the foregoing Government's Sentencing Memorandum was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

          s/Maritsa A. Flaherty
          Maritsa A. Flaherty (OH: 0080903)
          Assistant U.S. Attorney